| | |
|---|---|
| Scott L. Menger (305877)<br>smenger@carltonfields.com<br>CARLTON FIELDS, LLP<br>2029 Century Park East, Suite 1200<br>Los Angeles, CA 90067-2913<br>Telephone:  (310) 843-6300<br>Facsimile:   (310) 843-6301<br><br>Aaron S. Weiss (Admitted *Pro Hac Vice*)<br>aweiss@carltonfields.com<br>CARLTON FIELDS<br>100 S.E. Second Street, Suite 4200<br>Miami, FL 33131-2113<br>Telephone:  (305) 530-0050<br>Facsimile:   (305) 530-0055<br><br>Attorneys for Defendant, Third-Party Defendant, and Cross-Claimant FDE Marketing Group, LLC | |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER ALBRECHT,<br><br>                Plaintiff,<br><br>     vs.<br><br>NATIONAL BANCORP HOLDINGS, INC.,<br><br>                Defendant.<br>_____<br>NATIONAL BANCORP HOLDINGS, INC. d/b/a THE FEDERAL SAVINGS BANK ,<br><br>                Third-party Plaintiff,<br>     vs.<br><br>BEST RATE HOLDINGS, LLC d/b/a BEST RATE REFERRALS, and FDE MARKETING GROUP, LLC<br><br>                Third-Party Defendants. | Case No.:  8:19-cv-00810-DOC-JDE<br><br>**DEFENDANT, THIRD PARTY DEFENDANT, AND CROSS-CLAIMANT FDE MARKETING GROUP, LLC'S  CROSS-CLAIMS AGAINST BEST RATE HOLDINGS, LLC; DEMAND FOR JURY TRIAL**<br><br>Assigned to the Hon. David O. Carter<br><br>Complaint filed:       May 1, 2019<br>Pretrial Conference:  Not Set<br>Trial Date:              Not Set |

120588230.3

| | |
|---|---|
| 1 | _____ |
| 2 | FDE MARKETING GROUP, LLC |
| 3 |        Cross-Claimant, |
| 4 |   vs. |
| 5 | BEST RATE HOLDINGS, LLC d/b/a BEST RATE REFERRALS, |
| 6 |        Cross-Defendant. |

120588230.3

Defendant, Third Party Defendant and Cross-Complainant FDE Marketing Group, LLC ("FDE Marketing"), pursuant to Fed R. Civ. P. 13(g) and 18(a), files its cross-claims against Third Party Defendant and Cross-Defendant Best Rate Holdings, LLC d/b/a Best Rate Referrals ("Best Rate") and states:

## PARTIES

1. FDE Marketing is a Florida limited liability company; its sole member, Frank Bisesi, is domiciled in Puerto Rico. Accordingly, for the purposes of jurisdiction under 28 U.S.C. § 1332, FDE Marketing is a citizen of Puerto Rico.

2. Upon information and belief, the sole member of Best Rate Holdings, LLC is Digital Medial Solutions, LLC ("DMS"). Upon information and belief, DMS has two members, CEP V DMS US Blocker Co., a Delaware corporation with its principal place of business in Toronto, Canada; and Prism Data, LLC, which has three individual members: Fernando Borghese (a citizen of the state of Pennsylvania), Joe Marinucci (a citizen of the state of Florida), and Luis Ruelas (a citizen of the state of New Jersey). Accordingly, for the purposes of jurisdiction under 28 U.S.C. § 1332, Best Rate is a citizen of Delaware, Pennsylvania, Florida, New Jersey, and Canada.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over FDE Marketing's claims for common law indemnification, contractual indemnification, breach of contract and fraudulent and negligent misrepresentation pursuant to 28 U.S.C. § 1332 because FDE Marketing is diverse in citizenship from Best Rate, and more than $75,000, exclusive of interest and costs, is in controversy. This Court also has supplemental jurisdiction over FDE Marketing's claims pursuant to 28 U.S.C. § 1367.

4. Best Rate regularly conducts business in California, including with ADMK Agency, LLC ("ADMK").

5. A substantial portion of the events or omissions giving rise to

Plaintiff's Complaint and this Third-Party Complaint allegedly occurred in California.

6. Upon information and belief, a substantial portion of Best Rate's business is done with California companies.

7. Upon information and belief, approximately 30 percent of Best Rate's annual sales are made to customers in California.

8. Upon information and belief, Best Rate advertises the sale of its consumer lead information to companies in California.

9. Upon information and belief, a substantial portion of the consumer lead data that Best Rate sells corresponds to leads who reside in California.

10. Best Rate has the ability to, and does, filter consumer leads that it sells to its customers by the state of residence associated with each lead.

11. Upon information and belief, Best Rate frequently sells California consumer leads to its customers located in California, and in other states.

12. Therefore, Best Rate facilitates marketing activities directly in California and activities being directed into California.

13. At all relevant times, Best Rate knew, or should have known, that by selling California consumer information to its customers in California and in other states, that sales activities would be directed toward those California consumers.

14. Best Rate purchases information on California consumer leads from companies based in California.

15. Specifically, Best Rate purchased Plaintiff's lead information from ADMK.

16. At all relevant times, ADMK maintained and still maintains a corporate headquarters in Ladera Ranch, California.

17. Best Rate sold Plaintiff's lead information to FDE Marketing with the intent that FDE Marketing would direct marketing activities toward the Plaintiff in California.

18. Best Rate knew, or reasonably should have known, at the time that it purchased Plaintiff's lead information that the information would be used to conduct business in California.

19. Best Rate knew, or reasonably should have known, at the time that it sold Plaintiff's lead information that the information would be used to conduct business in California.

### FACTUAL BACKGROUND

20. At all relevant times, Best Rate was and is in the consumer lead generation business. Best Rate both directly procures consumer leads and purchases already procured leads from other entities. Best Rate resells these consumer leads to marketing companies.

21. FDE Marketing is a marketing services company that has purchased consumer leads from Best Rate.

22. FDE Marketing purchased consumer mortgage leads from Best Rate, including Plaintiff's information, for The Federal Savings Bank ("Federal Savings Bank").

23. Best Rate represented to FDE Marketing that its consumer mortgage leads were "quality opt in data," meaning that the leads were generated by consumers who had opted in to receive communications from Best Rate's mortgage partners and/or had been vetted against Do Not Call lists and were being scrubbed for TCPA compliance.

24. These representations included written representations. *See* **Exhibit A** (May 10, 2018 e-mail from Nick Benson of Best Rate to FDE Marketing).

25. In fact, Best Rate justified the high price of its leads by claiming they were high quality. *See id.*

26. FDE Marketing purchased the leads from Best Rate based upon these representations.

27. In turn, FDE Marketing made similar representations to Federal

1 Savings Bank when FDE Marketing sold Federal Savings Bank mortgage customer
2 leads.
3     28. Best Rate was aware that FDE would use the information to make live
4 transfer lead calls for Federal Savings Bank.
5     29. FDE Marketing reached an agreement with Federal Savings Bank
6 whereby FDE Marketing originated live transfer lead calls which were handled by
7 Federal Savings Bank employees.
8     30. On or about March 16, 2019, FDE Marketing originated a telephone
9 call to Plaintiff.
10     31. A Federal Savings Bank employee spoke with Plaintiff and Plaintiff
11 indicated he did not want to be contacted by Federal Savings Bank again.
12     32. On May 1, 2019, Plaintiff filed this putative class action for violations
13 of the TCPA, claiming Federal Savings Bank contacted him even though he was
14 on the Do Not Call list.
15     33. All conditions precedent to bringing this action have been satisfied by
16 FDE Marketing or have been waived.
17     34. FDE Marketing has retained the undersigned attorneys to represent it
18 in this action and has agreed to pay its attorneys a reasonable fee for their services.

**COUNT ONE**

**COMMON LAW INDEMNIFICATION**

**(Against Best Rate)**

22 FDE Marketing re-alleges the allegations set forth in paragraphs 1-34 above,
23 as if fully set forth herein.
24     35. The agreement between FDE Marketing and Best Rate formed a legal
25 and special relationship between those two parties that existed prior to any of the
26 calls alleged in Plaintiff's complaint.
27     36. This is a special relationship that gives rise to a duty for Best Rate to
28 indemnify and hold harmless FDE Marketing for any damages that FDE Marketing

4

1 may suffer in connection with calls made to Plaintiff and the putative class
2 members based upon Best Rate's representations regarding the nature of the lead
3 list.

4     37.    Plaintiff has alleged that he was damaged when he allegedly received
5 unsolicited telephone calls on his residential telephone line despite the fact that he
6 is on the Do Not Call list prior to his filing of the complaint in this action.

7     38.    Best Rate represented to FDE Marketing that the lead list it sold to
8 FDE Marketing had been "scrubbed" to ensure that the numbers on the list were of
9 people who had opted in to receive communications from Best Rate's mortgage
10 partners and/or to ensure that the numbers listed were not on the Do Not Call list.

11     39.    If FDE Marketing had known that Plaintiff did not consent to receive
12 calls, it never would have called Plaintiff.

13     40.    FDE Marketing's alleged liability to Plaintiff is solely derivative of
14 Best Rate's actions in selling a lead list that it represented was in compliance with
15 all applicable federal and state statutes, including the TCPA.

16     41.    The damages Plaintiff alleges in his complaint, if any, are a result of
17 Best Rate's acts and/or omissions, and not FDE Marketing.

18     42.    FDE Marketing is without fault in causing Plaintiff's alleged
19 damages.

20     43.    The relationship between FDE Marketing and Best Rate establishes a
21 right of indemnity in FDE Marketing against Best Rate regarding the allegations in
22 Plaintiff's complaint.

23     44.    Should Plaintiff be awarded any sums, including any damages, costs
24 or attorneys' fees against FDE Marketing, any such liability on the part of FDE
25 Marketing results from the acts or omissions of Best Rate.

26     45.    Accordingly, Best Rate should indemnify FDE Marketing for all
27 amounts for which FDE Marketing may be liable to Plaintiff, including any
28 damages, costs, attorneys' fees, or any other sums FDE Marketing is assessed.

# COUNT TWO
## BREACH OF WRITTEN/ORAL CONTRACT
### (Against Best Rate)

FDE Marketing re-alleges the allegations set forth in paragraphs 1-34 above as if fully set forth herein.

44. FDE Marketing and Best Rate entered into a valid and binding contract contained in writing and in oral conversations.

45. In connection with this contract, Best Rate represented that it was selling to FDE Marketing a lead list that was in compliance with all applicable federal and state statutes, including the TCPA.

46. Best Rate knew that FDE Marketing intended to sell the lead list to Federal Savings Bank.

47. In connection with entering this agreement, Best Rate provided to FDE Marketing Plaintiff's home telephone number ending in 8750 and represented that that FDE Marketing could lawfully call that number to market mortgage services.

48. FDE Marketing performed its obligations under the contract in accordance therewith by paying Best Rate for the lead list.

49. If Plaintiff's allegations are determined to be true, that FDE Marketing's calls to his home telephone number were unauthorized and unlawful, Best Rate breached the terms of its contract with FDE Marketing.

50. As a result of Best Rate's breach of contract, FDE Marketing has suffered damages, including damages incurred as result of Plaintiff's lawsuit, including the amount of any judgment entered in favor of Plaintiff against FDE Marketing, as well as FDE Marketing's own attorneys' fees and costs, in addition to the cost of purchasing the lead list.

120588230.3

## COUNT THREE
## NEGLIGENT MISREPRESENTATION
### (Against Best Rate)

FDE Marketing re-alleges the allegations set forth in paragraphs 1-34 above as if fully set forth herein.

51. Best Rate induced FDE Marketing to enter into the agreement by representing to FDE Marketing that the lead list was compliant with all federal and state statutes, including the TCPA.

52. If Plaintiff's allegations in this case are determined to be true, Best Rate's representations to FDE Marketing were false.

53. Best Rate knew that FDE Marketing intended to sell the lead list to Federal Savings Bank to use for marketing banking services in California and other states.

54. Best Rate's representations to FDE Marketing were made on or about May 10, 2018.

55. Best Rate's representations to FDE Marketing were made in writing in e-mails from Nick Benson.

56. Best Rate either knew that its lead list had not been vetted for compliance with federal and state statutes, or it was negligent in performing the vetting process. It either knew or should have known that its representations were false.

57. In making the representations, Best Rate knew or should have known that the representations would induce FDE Marketing to act by purchasing the lead list at a premium and representing to Federal Savings Bank in turn that the list was properly vetted.

58. FDE Marketing has suffered damages as a result of its reasonable and justifiable reliance on Best Rate's representations. Such damages include the money spent on purchasing the lead list from Best Rate, as well as damages

incurred as result of Plaintiff's lawsuit, including the amount of any judgment entered in favor of Plaintiff against FDE Marketing, plus FDE Marketing's own attorneys' fees and costs.

## COUNT FOUR

## FRAUDULENT MISREPRESENTATION

### (Against Best Rate)

FDE Marketing re-alleges the allegations set forth in paragraphs 1-34 above as if fully set forth herein.

59. Best Rate represented to FDE Marketing to that the lead lists it was selling were compliant with all federal and state statutes, including the TCPA. *See, e.g.,* Exhibit A.

60. Best Rate knew or should have known these representations were false.

61. Best Rate knew that FDE Marketing intended to sell the lead list to Federal Savings Bank to use for marketing banking services in California and other states.

62. Best Rate's representations to FDE Marketing were made on or about May 10, 2018.

63. Best Rate's representations to FDE Marketing were made in writing in e-mails from Nick Benson.

64. Best Rate either knew that its lead list had not been vetted for compliance with federal and state statutes, or it was negligent in performing the vetting process. It either knew or should have known that its representations were false.

65. These representations were intended to cause FDE Marketing to act, and FDE Marketing did act by purchasing the lead list at a premium and representing to Federal Savings Bank in turn that the list was properly vetted when selling the leads to Federal Savings Bank.

8

66. FDE Marketing has suffered damages as a result of its reasonable and justifiable reliance on Best Rate's representations. Such damages include the money spent on purchasing the lead list from Best Rate, as well as damages incurred as result of Plaintiff's lawsuit, including the amount of any judgment entered in favor of Plaintiff against FDE Marketing, plus FDE Marketing's own attorneys' fees and costs.

## COUNT FIVE
## VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Against Best Rate)

FDE Marketing re-alleges the allegations set forth in paragraphs 1-34 above as if fully set forth herein.

67. This is an action for violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.204.

68. FDE Marketing is a consumer as defined by FDUTPA.

69. Best Rate engaged in deceptive acts and unfair trade practices by representing that it was selling "quality" data to FDE Marketing and charging a premium for same, when it knew that the data was not properly vetted against the Do Not Call list.

70. Best Rate's conduct has caused injury both to FDE Marketing and to consumers such as the Plaintiff.

71. FDE Marketing has suffered damages as a result of Best Rate's deceptive acts and unfair trade practices. Such damages include the money spent on purchasing the lead list from Best Rate, as well as damages incurred as a result of Plaintiff's lawsuit, including the amount of any judgment entered in favor of Plaintiff against FDE Marketing, plus FDE Marketing's own attorneys' fees and costs.

## COUNT SIX

## BREACH OF IMPLIED WARRANTY OF

## FITNESS FOR A PARTICULAR PURPOSE

### (Against Best Rate)

FDE Marketing re-alleges the allegations set forth in paragraphs 1-34 above as if fully set forth herein.

71. This is an action for breach of implied warranty of fitness for a particular purpose pursuant to Fla. Stat. § 672.315 (and in the alternative, under Cal. Civ. Code § 1792.1) against Best Rate.

72. Best Rate marketed its lead list to FDE Marketing, as purchased from ADMK, as a list that was compliant with all federal and state regulations. FDE Marketing purchased this lead list from Best Rate.

73. Best Rate understood that the purpose of the lead list was to provide FDE Marketing with a list of individuals that FDE Marketing could contact on behalf of its clients.

74. FDE Marketing relied on Best Rate's judgment and expertise in making sure that the product provided would be suitable for the intended purpose.

75. Best Rate represented that the data on its lead list was "quality opt in data[.]"

76. FDE Marketing has since learned that Plaintiff claims he did not opt in to receive such communications and has sued FDE Marketing for violations of the TCPA.

77. FDE Marketing has provided Best Rate with notice of its breach of warranty.

78. FDE Marketing has sustained injuries as a result of the breach of warranty. Such damages include the money spent on purchasing the lead list from Best Rate, as well as damages incurred as a result of Plaintiff's lawsuit, including

120588230.3

the amount of any judgment entered in favor of Plaintiff against FDE Marketing, plus FDE Marketing's own attorneys' fees and costs.

## COUNT SEVEN

### BREACH OF WRITTEN AGREEMENT TO HOLD HARMLESS

### (Against Best Rate)

FDE Marketing re-alleges the allegations set forth in paragraphs 1-34 above, as if fully set forth herein.

79. After the lawsuit was filed, FDE Marketing contacted Best Rate to request proof that Plaintiff had opted in to receive phone calls as Best Rate had represented when it sold the lead list to FDE Marketing.

80. FDE Marketing expressed concern to Best Rate that Best Rate's conduct had caused FDE Marketing to become involved in the lawsuit.

81. Best Rate then represented in writing that Best Rate would "help monetarily" and "won't leave you hanging."

82. Prior to filing this cross-complaint, FDE Marketing made a written demand to Best Rate to hold FDE Marketing harmless in this lawsuit and provided Best Rate with an opportunity to do so.

83. The deadline FDE Marketing provided has expired and Best Rate has not responded.

84. FDE Marketing's alleged liability to Plaintiff is solely derivative of Best Rate's actions in selling a lead list that it represented was in compliance with all applicable federal and state statutes, including the TCPA.

85. The damages Plaintiff alleges in his complaint, if any, are a result of Best Rate's acts or omissions.

86. FDE Marketing is without fault in causing Plaintiff's alleged damages.

87. By breaching its agreement to hold FDE Marketing harmless, Best Rate has caused FDE Marketing to incur attorneys' fees and costs, and FDE Marketing will continue to incur attorneys' fees, costs and other damages.

120588230.3

88. Should Plaintiff be awarded any sums, including any damages, costs or attorneys' fees against FDE Marketing, any such liability on the part of FDE Marketing results from the acts or omissions of Best Rate.

89. Accordingly, Best Rate should honor its written acknowledgment that it will hold FDE Marketing harmless for all amounts for which FDE Marketing may be liable to Plaintiff, including any damages, costs, attorneys' fees, or any other sums FDE Marketing is assessed.

## PRAYER

WHEREFORE, Defendant and Cross-Complainant FDE Marketing prays as follows:

**On Counts One and Seven:**

1. In the event judgment is entered against FDE Marketing and in favor of Plaintiff, judgment be entered in favor of Cross-Complainant FDE Marketing, and against Cross-Defendant Best Rate, in the amount of any judgment entered against FDE Marketing;

2. That FDE Marketing be awarded its attorneys' fees, interest, and the cost of this suit; and

3. Any other relief the Court finds just and proper.

**On Counts Two, Three, Four, Five and Six:**

1. That judgment be entered in FDE Marketing's favor and against Cross-Defendant Best Rate for damages for the cost of the lead list, as well as damages incurred as a result of Plaintiff's lawsuit, including the amount of any judgment entered in favor of Plaintiff against FDE Marketing;

2. FDE Marketing's own attorneys' fees, interest, penalties, and the costs of this suit; and

3. Any other relief the Court finds just and proper.

Dated:  December 12, 2019            CARLTON FIELDS, LLP


                                     By:   /s/ Scott L. Menger
                                           SCOTT L. MENGER
                                     Attorneys for Defendant and Third-Party
                                     Defendant FDE Marketing Group, LLC

13

120588230.3

**DEMAND FOR JURY TRIAL**

FDE Marketing demands a trial by jury on all issues so triable.

Dated: December 12, 2019                CARLTON FIELDS, LLP


By: /s/ Scott L. Menger
    SCOTT L. MENGER
Attorneys for Defendant and Third-Party
Defendant FDE Marketing Group, LLC

14

120588230.3